# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

AILEEN ANDERSON

        Plaintiff,

vs.                                                          CASE NO: 2:06-cv-207-FtM-29SPC

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[2]

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Plaintiff, Aileen Anderson's Complaint Seeking

Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the

Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on April 21, 2006. The Plaintiff filed her

Memorandum of Law in Support of the Complaint (Doc. #11) on September 11, 2006.  The

Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #12)

on October 10, 2006.  Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before

---

[1]    Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1), the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

1

the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

On November 11, 1994, the Plaintiff filed an application for Disability Insurance Benefits. (Tr. 17). The Plaintiff was granted payment as of June 1, 1994, her onset day of disability, by a State Agency's determination that the Plaintiff's severe impairments prevented her from performing a full range of sedentary work. (Tr. 17). On June 10, 2002, the Plaintiff was notified that her disability benefits ceased effective June 1, 2002. (Tr.17, 38). The Plaintiff timely filed a request for reconsideration and the cessation was upheld. (Tr. 17, 31-32, 62). The Plaintiff filed a request for hearing before an Administrative Law Judge (ALJ) on March 27, 2003. (Tr. 17). On July 27, 2004, the Plaintiff appeared and testified at a hearing which was held before the Honorable Michael S. Maram, Administrative Law Judge. (Tr. 559-590). On October 25, 2004, the ALJ issued an unfavorable decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 18). Pursuant to 42 U.S.C.§ 405(g), the Plaintiff now seeks judicial review of the Commissioner's final decision.

### *Plaintiff's History*

The Plaintiff was born on November 1, 1945, making her fifty-nine (59) years of age at the time of the hearing. (Tr. 22). The Plaintiff's past relevant work includes employment as a corrections officer, a cashier, a clerk typists and a paramedic. (Tr. 22). The Plaintiff alleges an onset disability date of June 1, 1994, and that she continues to be disabled due to reflex sympathetic dystrophy. (Tr. 22, 27).

*Medical and Psychological History*

The Plaintiff alleges continuing disability which is based on both her physical and mental conditions, all arising from her accident in 1992.   At that time, Plaintiff sustained an avulsion fracture of her right lower extremity. (Tr. 286, 295).    Medical records also show that the Plaintiff has complete hearing loss in her left ear as a result of childhood measles.  (Tr. 538).

On October 19, 1992, the Plaintiff presented to Dr. Michael Jugan for evaluation of her right foot. (Tr. 295).  Examination of the foot showed full range of motion through the ankles and subtalar joint. (Tr. 295).  There was a small osseous bump in the region of the peroneal brevis tendon, not tender on palpation. (Tr. 295).   X-rays taken at Lee Memorial Hospital were unremarkable. (Tr. 295).  Dr. Jugan opined the Plaintiff had low grade achilles tendinitis with peroneal brevis tendon injury, possibly non-partial tear. (Tr. 295).  An MRI was ordered to evaluate tendon substance.  (Tr. 295).

On October 23, 1992, the Plaintiff underwent an MRI of the right foot. (Tr. 293).  The MRI results showed no evidence of bony or soft tissue abnormality and no evidence of tendonitis or mass lesions. (Tr. 293).  The impression was a normal MRI of the right foot.  (Tr. 293).

On November 2, 1992, the Plaintiff returned to Dr. Jugan.  Dr. Jugan noted the Plaintiff continued to experience global tenderness throughout her foot and ankle region.  Dr. Jugan opined the Plaintiff may have been dealing with dystrophy and ordered a thermogram.  (Tr. 286).   On November 18, 1992, Dr. Jugan reported the results of the thermogram were normal but the Plaintiff continued to complain about pain throughout the lateral border of the foot across the mid foot.  (Tr. 286).  Dr. Jugan recommended the Plaintiff continue with physical therapy, and obtain a bone scan with possible further examination for dystrophy.  (Tr. 286).

3

On December 7, 1992, upon referral from Dr. Jugan, the Plaintiff presented to Dr. Nickolas Collucci of the Anesthesiology Pain Clinic of Gulf Coast Hospital. (Tr. 231-232). Upon examination, Dr. Collucci reported some sensitivity to touch and very slight edema. (Tr. 256). Dr. Collucci's impression was of chronic pain syndrome and must rule out reflex sympathetic dystrophy and a history of espohagitis. (Tr. 257).

On January 8, 1993, the Plaintiff underwent a right lower extremity bier block. (Tr. 253). The Plaintiff tolerated the procedure well and was discharged with instructions to return to the clinic on January 15, 1993. (Tr. 253). Upon return, the Plaintiff stated she was pain free for approximately three and a half (3 ½) days  and then the pain gradually returned over the course of 2-3 days. (Tr. 252). Dr. Collucci planned on completing approximately six (6) blocks and re-evaluate at that time. (Tr. 252. The Plaintiff continued to received bier blocks for pain relief. (Tr. 252-243).

On February 26, 1993, Dr. Jugan authored a letter which indicated that the Plaintiff was being treated for Reflect Sympathetic Dystrophy (RSD) of the right foot. (Tr. 279). Dr. Jugan stated that the Plaintiff should  work as tolerated, in a sedentary work capacity, with frequent positional changes because she could not tolerate being on her feet for long periods of time. (Tr. 279). The Plaintiff continued to be treated for RSD through April 1993, by Dr. Collucci and received additional lumbar blocks for pain. (Tr. 233-242).

On August 23, 1994, the Plaintiff was examined by Dr. Suzanne Rosen, a psychologist. (Tr. 331-334). The Plaintiff stated that she was frightened and psychologically devastated after researching RSD and what it could do. (Tr. 332). The Plaintiff stated that she returned to light duty, however, working became too difficult for her and she could not concentrate. (Tr. 332). The Plaintiff reported very poor sleep with frequent awakening by pain and spasms. (Tr. 332). In

addition to many other symptoms, she reported nightmares, night sweats, and panic attacks, palpitations, tachycardia, shortness of breath, and a touch of claustrophobia. (Tr. 332-333). Her depression had been developing, she would cry frequently, and she felt extremely pessimistic about her condition. (Tr. 333). Dr. Rosen stated the Plaintiff had a poor relationship with her Workman's Compensation claims adjuster and had obsessive ideation about what "they" would do to her next. (Tr. 333). Dr. Rosen opined that aggressive pain management was crucial to "stop the disease and halt the devastation in Plaintiff's life". (Tr. 333).

Meanwhile, in August and September 1994, Dr. H. Hoosmand, a psychiatrist and neurologist, examined the Plaintiff for problems with pain involving the right foot up to the groin. (Tr. 229-306A). On August 29, 1994, during examination Dr. Hoosmand stated the Plaintiff was significantly depressed and had moderate occipital nerve irritation bilaterally. ( Tr. 303). She had moderate cervical paraspinal spasms and pressure on the right reticular facets caused right-sided headaches. (Tr. 303). Pressure on the right C4-5 reproduced her neck pain and right TMJ pain and tenderness and spasms. (Tr. 303). Pressure on the right C5-6 and C6-7 articular facets reproduces radiating pain down to the base of the cervical spine and right shoulder. (Tr. 303). These areas of articular facets irritation were injected with local anesthesia which provided excellent relief of headache, occipital neuralgia, TMJ pain, neck pain and shoulder pain. (Tr. 303). The Plaintiff had moderate sensory loss over dorsum of the right foot with marked hyperpathia and allodynia of the right foot and even a simple touch caused her to have marked pain and withdrawal. (Tr. 304). The Plaintiff had moderate sensory loss over the lateral aspect of the right ankle and the dorsum of the right foot. (Tr. 304). The Plaintiff had an area of muscle atrophy below the right knee with loss of muscle and mild weakness of the toe extensors. (Tr. 304). The Plaintiff's ankle jerks were

moderately decreased, other reflexes were normal.  (Tr. 304).  The Plaintiff had an antalgic gait on the right and was quite unsteady when standing on her right foot.  (Tr. 304).

A thermogram was performed that showed moderate RSD in both lower extremities more prominently on the right than the left side.  (Tr. 304).  Additionally, thermography showed a moderate decrease in temperature in distribution of lateral peroneal and tibial anterior nerves on the right side. (Tr. 304).  Dr. Hoosmand opined the Plaintiff should receive at least six (6) consecutive nerve blocks followed by extensive physiotherapy, moist heat, and exercise on the days that the nerve blocks are done.  Additionally, Dr. Hooshmand felt the Plaintiff should receive diet instructions to avoid food such as chocolate and other stimulants of the sympathetic nervous system, and medications.  (Tr. 306).  Furthermore, the Plaintiff would require medication for the treatment of chronic pain and oral alpha blockers.  (Tr. 306).

On November 11, 1994, Dr. Eileen L. Schwartz, a neurologist, examined the Plaintiff for "pain and swelling, etc.". (Tr. 307-309).  Motor examination revealed a symmetrical indentation just lateral to the anterior tibialis.  (Tr. 309).   It would be unusual for this to be a focal area of symmetrical identification and no atrophy was noted elsewhere.  (Tr. 309).  Upon extensive findings on examination,  Dr. Schwartz opined that Plaintiff had, despite any overt signs at this time, late reflex sympathetic dystrophy based on subjective findings and thermography. (Tr. 309).

On December 19, 1994, the Plaintiff was seen by Dr. Donald Pollock, a neurologist and psychiatrist, for evaluation of pain. (Tr. 344-347).  Upon examination, Dr. Pollack noted the Plaintiff was neatly dressed and groomed and had good eye contact.  (Tr. 346).  The Plaintiff appeared sad and tired.  There was no evidence of delusions, hallucinations, phobias or obsessive-compulsive disorder.  (Tr. 346).  The Plaintiff denied suicidal ideation, possessed average intelligence,  insight

and judgment were good, spoke coherently with no evidence of looseness of associations.  (Tr. 347).

  Dr. Pollack diagnosed her with major depression, chronic pain and assigned her a present Global

Assessment of Functioning ("GAF") of 50  and a past GAF of 60. (Tr. 347).  Dr. Pollock further

opined that the Plaintiff had significant depression that was secondary to her inability to be active and

productive.  (Tr. 347).   Dr. Pollack suggested continuation of medication, continue treatment with

Dr. Rosen, join a therapeutic group for individuals with chronic pain and psychological testing.  (Tr.

347).

        On December 15, 1994, Dr. Rosen completed a psychological impairment rating on the

Plaintiff. ( Tr. 330).  Dr. Rosen opined  the Plaintiff had extreme restrictions of daily activities, was

moderately restricted in maintaining social functioning, markedly restricted in deficiencies of

concentration, persistence or pace, and experienced episodes of deterioration or decompensation in

work or work like settings once or twice. (Tr. 330).

        On April 19, 1995, the Plaintiff presented to Gulfcoast Spine Institute and was seen by Dr.

Joseph Kandel.   Dr. Kandel reviewed the Plaintiff's past medical record and conducted an

examination.  Neurologically, the Plaintiff was anxious and uncomfortable.  There was no carotid,

orbital, cranial or supaclavicular bruits on auscultation.  (Tr. 516).  A neck examination revealed

trigger and tenderness of the C4-5 and C5-6 paraspinous muscles on the right side, as well as over

the right C5-6 facet.  (Tr. 517).  There was point tenderness over the trapezius orgin and none on the

left.  (Tr. 517).  Palpation produces the Plaintiff's headache pain syndrome.  (Tr. 517).  There was

no L'hermitte's sign or meningismus and no nerve root impingement.  (Tr. 517). Motor examination

revealed full function of upper extremities bilaterally.  (Tr. 517).  There was no evidence of right

upper extremity weakness, numbness or clumsiness, despite claims of increased pain.  (Tr. 517).  Left

7

lower function was full, the right lower extremity function was difficult to assess because of sever pain, swelling and discomfort. (Tr. 517). Dr. Kandel opined the Plaintiff has a significant right lower extremity neurologic deficit in the form of RSDS. (Tr. 518). Dr. Kandel suggested cervical x rays, re-education of the TENS unit, using heat, a heating rub for symptomatic relief and vasodiliation, physiotherapy three (3) times a week for four (4) weeks, whirlpool therapy and medication. (Tr. 518).

On April 1, 1996, the Plaintiff presented to Tampa General Hospital and was seen by Dr. Anthony Kirkpatrick. (Tr. 555-558). The Plaintiff complained that her right upper extremity was her worst pain. (Tr. 556). The Plaintiff stated this began approximately one (1) year ago with a tingling sensation over the dorsum of her hand in the area of the thumb and forefinger and spread proximally to include the elbow, shoulder, neck, midline and left shoulder. (Tr. 556). Upon examination, Dr. Kirkpatrick found temperature measurements on the lower extremities revealed the right foot was one degree cooler than the left. (Tr. 557). There were no other asymmetries noted. (Tr. 557). The upper extremities were equal temperature. (Tr. 557). Dr. Kirkpatrick opined the Plaintiff had myofascial pain syndrome with multiple periscapular trigger points. (Tr. 557). Dr. Kirkpatrick suggested the Plaintiff receive trigger point injections. (Tr. 558).

Examination on February 7, 1997, revealed trophic skin changes particularly in nail beds, bilateral thumb and right great toe. (Tr. 533). The Plaintiff had hyperpathia and dysesthesia in the right lower extremity and diffuse tenderness over the lumbar paraspinous muscles. (Tr. 533). The Plaintiff was diagnosed with RSDS, subsequent myofascial pain syndrome and occult depression. (Tr. 533). Dr. Kandel continued to treat Plaintiff through July 1998. (Tr. 531-535).

On July 14, 1998, the Plaintiff presented to Dr. Kandel complaining of exacerbation of severe neck pain, bilateral upper extremity paresthesias, and right upper extremity burning and numbness.

(Tr. 535).  After examination, Dr. Kandel diagnosed the Plaintiff with RSDS, previously at maximum medical improvement, cervical strain/sprain/spasm, mixed headache disorder, cervical radiculitis, right C6, and extremity pain. (Tr. 535).

The Plaintiff was seen by Dr. Paul J. Joslyn, of Physicians Primary Care of SW FL, for gynocological care from December 5, 1995, through March 2002. (Tr. 372-408).   On March 5, 1990, the Plaintiff presented with concerns of heavy bleeding, cramping and pelvic pressure.  (Tr. 407).  Dr. Joslyn ordered an endometrial biopsy.  (Tr. 407).  Test results were positive for proliferative endometrium.  (Tr. 406).  Dr. Joslyn began treatment using Provera 10mg.  (Tr. 405).  In October 1990, the Plaintiff underwent a hysterectomy and was doing well.  (Tr. 399).

The Plaintiff was treated by Dr.  Scott E. Wiley from June 19, 2000 through March 2002 for continued pain.  (Tr. 461-468).   On June 19, 2000, the Plaintiff presented to Dr. Wiley with complaints of GERD recently worsening due to weight gain. (Tr. 468).  Dr. Wiley noted the Plaintiff had a history of blood in her stool, had undergone multiple colon biopsies, and had benign polyps removed on at least four (4) episodes.  (Tr. 19, 468).  The Plaintiff also had a history of diverticulitis.  (Tr. 468).   On August 9, 2000, the Plaintiff reported that her left heel had been hurting for the past two weeks and had increased in intensity.  (Tr. 467).  The Plaintiff was diagnosed with Achilles tendonitis.  (Tr. 467).   On November 29, 2000, the Plaintiff presented with multiple medical complaints, including foot pain, ear pain and skin lesions.  (Tr. 19, 467).

On March 11, 2002, the Plaintiff presented to Dr. Wiley with multiple complaints.  (Tr. 464).  The Plaintiff reported chronic pain in her right leg. (Tr. 464).  The Plaintiff had been on multiple pain medications but had not been taking them out of fear of dependence.  (Tr. 464).  She had recently fell and struck her right knee and developed pain in her right groin radiating down her knee. (Tr.

9

464).  Examination revealed tenderness of the hip with internal and external rotation on the right.  (Tr.

464).  On March 21, 2002, she was returned to Dr. Wiley for a recheck for buttock pain.  (Tr. 461).

Examination revealed that the Plaintiff experienced pain beyond 30 degrees of flexion.  (Tr. 461).

There was no palable tenderness.  (Tr. 461).

On May 7, 2002, the Plaintiff underwent a psychological evaluation by Dr. Bruce Crowell at

the request of the State Agency.  (Tr. 424-426).  The mental status interview showed the Plaintiff to

be neatly dressed with good hygiene.  (Tr. 425).  She ambulated independently with a normal gait.

(Tr. 425).  The Plaintiff showed evidence of psychomotor retardation.  (Tr. 425).  There was no

indication of thought disorder, either in form or content.  (Tr. 425).  The Plaintiff stated that she was

able to perform simple chores around the house and self-care skills were independent.  (Tr. 425).  The

Plaintiff reported spending time listening to relaxation tapes, using a spa and pool and was capable

of driving short distances.  (Tr. 20, 425).  The Plaintiff's range of speech was slow but with good

articulation and volume.  (Tr. 20, 425).  The Plaintiff's mood was described as generally sad and her

affect was anxious.  (Tr. 425).  Dr. Crowell reported that the Plaintiff was alert and oriented to

person, place and time.  (Tr. 426).  Memory processes were intact, her general fund of information

was good and appeared to be functioning within the average range of intelligence.  (Tr. 426).  Dr.

Crowell diagnosed the Plaintiff with Major Depression.  (Tr. 426).

On May 17, 2002, the Plaintiff presented to Dr. Moyer with chief complaints of lumbago with

right hip and groin pain, as well as lumbar radicular pain.  (Tr. 456).  Additionally, the Plaintiff

complains of ongoing cervicalgia with occasional intermittent pain to a lesser degree that shoots

sporadically into the arms.  (Tr. 456).  The Plaintiff reported she has not had any treatment except

for using a heated pool and Celebrex.  (Tr. 456).  Upon examination, there was no gross atrophy in

10

her hands, feet, or legs. The Plaintiff showed good range of motion. (Tr. 458). There was no noted temperature or color changes in her hands or feet and good pulses throughout. (Tr. 458). There was increased tenderness to palpation of right sacroiliac area. (Tr. 458). Neurologically, the Plaintiff's sensory was intact throughout except subjective hypesthesia in the right foot with mild dysesthesia in both the right foot and hand. (Tr. 458). On gross exam, it appeared the Plaintiff's strength was 5/5 given that she was able to weight bear and dorsiflex with weightbearing on her right foot. (Tr. 458). The left side was 5/5 throughout. (Tr. 458). The Plaintiff's reflexes were all symmetrical throughout in the upper and lower extremities with no long-tract findings. (Tr. 458). Dr. Moyer opined the Plaintiff has lumbago with right lumbar radicular pain, cervicalgia with intermittent radicular pain subjectively, and a history of RSD in the right leg and right hand. (Tr. 458).

On June 10, 2002, Robert Wismer issued a Discussion of Medical Improvement. (Tr. 427). At that time, Mr. Wismer stated the Plaintiff alleges RSD, burning sensation in the extremities, and pain. (Tr. 427). The Plaintiff was diagnosed with right groin and buttock pain, secondary to RSD and major depression by history. (Tr. 427). The Plaintiff had good range of motion, no clubbing, cyanosis or edema. (Tr. 427). Right hip is normal. (Tr. 427). Lumbar ROM is full in all planes, with no tenderness. (Tr. 427). The Plaintiff demonstrated normal gait and has been walking to lose weight. (Tr. 427). Vision is 20/20 bilaterally and corrected with glasses. (Tr. 427). Based upon the current findings, Mr. Wismer concluded that medical improvement had been demonstrated and cessation of benefits was appropriate. (Tr. 427).

On July 12, 2002, the Plaintiff returned to Donald J. Moyer for further evaluation of right buttock, hip and groin pain on the right side including radiologic testing. (Tr. 450). Dr. Moyer reported the MRI of the lumbar spine to be unremarkable except for some mild disc space narrowing

11

at L5-S1. (Tr. 450). The Plaintiff also complained of cervicalgia with some intermittent shooting pain in the upper arms. (Tr. 450). The cervical MRI showed some central disc bulge at C6-7, T1-2 and left neural foramina mild at C3-4 and C4-5. There was no spinal cord compression. (Tr. 450). Cervical spine x-rays are unremarkable. (Tr. 450). The lumbar spine shows a mild levoscoliosis with decreased disc height at L5-S1 and anterolisthesis L4-5, which slightly increases on flexion and decreases on extension. (Tr. 450, 452 ). Dr. Moyer referred the Plaintiff to an orthopedic surgeon for evaluation of a positive hip rotational test. (Tr. 450).

On August 13, 2002, the Plaintiff presented to Dr. James E. Croley of the Cataract & Refractive Institute of Florida. (Tr. 421-423). The Plaintiff was referred by Dr. Wiley due to complaints of dry eyes. (Tr. 421). The Plaintiff's vision was tested. The results showed vision in the right eye was 20/20 -1 and 20/20 in the left eye. (Tr. 20). The Plaintiff was suspect for glaucoma and the Plaintiff was assessed with dry eye syndrome. (Tr. 422).

On April 14, 2004, the Plaintiff presented to the Lee Memorial emergency room with complaints of chest pressure and palpations. (Tr. 478-479). The Plaintiff was treated immediately with Nitroglycerin which alleviated her symptoms. (Tr. 478). The Plaintiff was given heparin drip, lidocaine bolus and drip. (Tr. 478). The Plaintiff was admitted for further evaluation and treatment. (Tr. 478). Chest x-rays showed hypoinflation with mild pulmonary venous congestion with no focal infiltrates. (Tr. 21, 478). An echocardiogram showed normal overall left aortic valve sclerosis without stenosis noted, and some mild concentric left ventricular hypertrophy shown. (Tr. 21, 478). Nuclear studies showed no evidence of reversible ischemia. (Tr. 478). The Plaintiff was diagnosed with chest pain without evidence of critical coronary stenosis, and ventricular ectopy, controlled. (Tr. 20, 473).

On July 15, 2004, Dr. Rosen completed a Mental Residual Functional Capacity evaluation on Plaintiff. (Tr. 507-510). Dr. Rosen opined that Plaintiff would have poor or no ability to deal with the public, deal with work stress and maintain attention or concentration. She would have fair ability to follow work rules, relate to co-workers, use judgment, and function independently due to an extremely painful neurological disease as well as post-traumatic stress syndrome. (Tr. 21, 507). The Plaintiff stated that pain left her weak and limited her ability to stand, sit and walk. (Tr. 507). The Plaintiff would have poor or no ability to carry out complex or detailed instructions due to her pain level and her ability to remember instructions was impaired. The Plaintiff had poor sleep, which affected her mental efficiency in all areas, and poor or no ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability due to her post traumatic stress. Her pain and fatigue would affect her reliability, her absences would be frequent, and certain reactions to situations would be irrational. Dr. Rosen further opined the Plaintiff had been disabled from work since August 20, 1992. (Tr. 508). She diagnosed Plaintiff with generalized persistent anxiety with motor tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning. She had a persistent irrational fear of a specific object activity or situation and recurrent obsessions or compulsions and intrusive recollections of a traumatic experience. She was extremely limited in her daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. 509).

### Administrative Law Judge's Decision

Upon careful consideration of the record, the ALJ found and noted that the Plaintiff was previously granted disability benefits by State Agency Determination based upon the finding that the Plaintiff's impairment prevented her from performing a full range of sedentary work. (Tr. 26).

However, on June 19, 2002, the Plaintiff was notified that her disability had ceased as of June 1, 2002. (Tr. 26). The ALJ found that the Plaintiff experienced medical improvement in her condition at the CPD, and that no exceptions applied. (Tr. 26). The ALJ further found that the Plaintiff had not engaged in substantial gainful activity since her disability benefits were ceased on June 1, 2002. (Tr. 26). The ALJ determined the medical evidence indicated the Plaintiff currently had the severe impairment of reflex sympathetic dystrophy of the right foot. (Tr. 26). However, the medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation no. 4. (Tr. 26). The ALJ further found the Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 27). The ALJ concluded the Plaintiff retained the residual functional capacity to perform a full range of light work. (Tr. 27). The Plaintiff has the ability to lift ten (10) pounds frequently and twenty (20) pounds occasionally. (Tr. 27). The Plaintiff has the ability to sit for six (6) hours during an eight (8) hour workday, and stand/walk for six (6) hours during an eight (8) hour workday. (Tr. 27). The ALJ further concluded the Plaintiff's past relevant work as a cashier, and as a clerk typist did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 27). Therefore, the Plaintiff's medically determinable reflex sympathetic dystrophy of the right foot does not prevent the Plaintiff from performing her past relevant work. (Tr. 27). The ALJ found the decision that the Plaintiff's disability ceased on June 1, 2002, was proper and that no exceptions apply. (Tr. 27). Accordingly, the Plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the decision. (Tr. 27).

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3].  See 20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis

16

v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the

Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42

U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098

(11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ

failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at

534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal

standards).  Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow

ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record,

including any new material evidence upon a showing that there is new evidence which is material and

that there was good cause for the failure to incorporate such evidence into the record during a prior

proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding

to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)

(remanding on the grounds that it is reversible error for the ALJ not to order a consultative

examination when warranted). After a sentence-four remand, the district court enters a final and

appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095.

Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994). With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[4] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues the Commissioner erred as follows: (1) the Commissioner failed to meet his burden of proving medical improvement because the record contained no functional assessments of her capacity by any physicians who considered the complete record; (2) the Commissioner failed to consider and/or improperly minimized the effect of the Plaintiff's Cervicalgia, total hearing loss, and spread of her Reflex Sympathetic Dystrophy (RSD) to her upper right extremity or her ability to continue her past relevant work; (3) the Commissioner erred in discrediting Dr. Rosen's opinion due to the lack of progress notes because Dr. Rosen's notes had been destroyed by an act of God and in his characterization of Dr. Crowell's opinion.  The Government responds that the Commissioner supported his decision that the Plaintiff was no longer disabled with substantial evidence.

### (1) Whether the Commissioner Failed to Meet His Burden of Proving Medical Improvement

Under the Social Security Act once an individual is awarded disability benefits by the Social Security Administration (SSA), those benefits will cease upon a showing that there has been medical improvement related to the ability to work. 42 U.S.C. § 423(f), 42 U.S.C. § 1382c(a)(4).  The Social Security Act (the Act) states in pertinent part:

> [a] recipient of benefits . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by–substantial evidence which demonstrates that:
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments

19

> (other than medical improvement which is not related
> to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial
> gainful activity

42 U.S.C. § 423(f)(1)(A)(B).  Once the claimant has introduced evidence that his or her condition remains the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. Williams v. Apfel, 73 F. Supp. 2d 1325, 1337 (M.D. Fla. 1999).  The presumption of a continuing disability does not affect the ultimate burden of proof. Id.  It imposes on the Commissioner only the burden of going forward with evidence to rebut or meet the presumption. Id. Once the burden to come forward has shifted to the Commissioner, the Commissioner must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity. Id. (quoting Daring v. Heckler, 727 F.2d 64, 68069 (3d Cir. 1984).

The Plaintiff asserts the Commissioner failed to meet his burden because the record contained no functional assessments of her capacity by any physicians who considered the complete record.  As grounds, the Plaintiff states the ALJ relied on the medical opinion of the state agency physician who made his opinion without reviewing the medical records of Dr. Moyer.

Contrary to the Plaintiff's argument , the ALJ considered the medical report from Dr. Moyer despite the fact the information was not available to the State Agency Physician.  The ALJ further considered the Plaintiff's mental state and pain and determined the Plaintiff was receiving no medical treatment for either condition other than over-the-counter medications.

In his decision, the ALJ noted that Dr. Moyer reported on May 17, 2002, that the Plaintiff "had not had any treatment for symptoms other than using a heated pool and taking the medication

Celebrex." (Tr. 22).  The ALJ continued that "Dr. Moyer further noted x-rays of the Plaintiff's hip

were unremarkable. (Tr. 22).  During the evaluation by Dr. Moyer, the Plaintiff complained of

ongoing cervicalgia with occasional intermittent pain that shot sporadically into her arms, however,

during musculoskeletal examinations there was no gross atrophy in the Plaintiff's hands, feet or legs.

(Tr. 22).  The ALJ further noted:

> The Plaintiff demonstrated good range of motion and there were no
> temperature or color changes noted in hands or feet. The claimants sensory
> examination was intact throughout except for subjective hyperthesia in the
> claimant's right foot with mild dysesthia in both right foot and hand.  The
> claimant's reflexes were all symmetrical throughout the upper and lower
> extremities with no long-tract findings.  Also during a follow-up appointment
> dated March 11, 2002, Dr. Wiley reported that diagnostic studies had
> revealed only mild degenerative changes at the L5-S1 levels, and that the
> claimants right hip study was negative.  Finally the claimant testified that she
> only takes extra strength Tylenol for her pain and that she takes no
> prescription medications. (Tr. 22).

The ALJ further noted the Plaintiff had not received  any mental health counseling since her CPD.

(Tr. 22).  While the Plaintiff argues the State Consultant Physician did not review all of the records

including Dr. Moyer's report, the ALJ did consider those reports.  It is clear from the ALJ's decision

that he reviewed all of the medical evidence.  It is also clear he relied on a broad range of medical

evidence and not just the State Consultant Physician's opinion when making his determination.

Under the Act, the Plaintiff still bears the burden of proof for her disability.  Williams, 73 F.

Supp. 2d at1337.  The ALJ must rebut the presumption of disability only after the Plaintiff has

presented evidence of her continued disability.  Id.   The ALJ must then present evidence that there

has been sufficient improvement in the claimant's condition.  Id.   Here, it is clear the ALJ presented

substantial evidence the Plaintiff could return to gainful activity.  Therefore, the  Commissioner met

his burden under the Act.

*(2) Whether the Commissioner Failed to Consider and/or Improperly Minimized the Effect of the Plaintiff's Cervicalgia, Total Hearing Loss, and Spread of Her Reflex Sympathetic Dystrophy (RSD)*

When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)).  At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005).  An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)).  Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991).  An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing  Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

The Plaintiff states the ALJ failed to consider all of her impairments in combination and/or

failed to address specific impairments including her cervicalgia, total hearing loss in her left ear, and the spread of her RSD to her upper extremities.   In his decision, the ALJ directly addressed the cervicaliga noting that while "the [Plaintiff] complained of on going cervicaliga with occasional intermittent pain that shot sporadically through her arms . . . her musculoskeletal examination [showed] no gross atrophy in [her] hands, feet, or legs." (Tr. 22).   The ALJ further noted the Plaintiff demonstrated a good range of motion, and there were no temperature or color changes noted in her hands or feet. (Tr. 22).   Thus, the ALJ specifically addressed and discounted the cervicalgia. Regarding the Plaintiff's RSD, the ALJ noted that since the CPD, the Plaintiff had required little medical care for her RSD. (Tr. 22).

However, the Plaintiff did have medical evidence that reported she had total hearing loss in her left ear. (Tr. 538).  This was confirmed by the Plaintiff in her Disability Report filed on September 28, 1994. (Tr. 112).  As indicated above, the ALJ must consider the combined effect of all of the Plaintiff's alleged impairments including capacities for seeing, hearing, and speaking even though none of the impairments, when considered individually, is severe or disabling.  The ALJ must make specific and well articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the Plaintiff to be disabled. Ayers v Barnhart, 2007 WL 295518 (M.D. Fla. January 30, 2007).  The record demonstrates the fact that the ALJ did a thorough review of the record, and made what the Court deems to be the proper decision regarding the Plaintiff's continued disability.  However, the ALJ's decision does not demonstrate the ALJ considered the Plaintiff's hearing loss either as a separate impairment or in combination with other impairments prior to making his determination that she was no longer disabled.  Therefore, it is respectfully recommended that the issue should be remanded to the Commissioner for consideration of the effect

of the Plaintiff's hearing loss individually and in combination with her other impairments.

### (3) Whether the Commissioner Erred in Discrediting Dr. Rosen's Opinion Due to the Lack of Progress Notes and in His Characterization of Dr. Crowell's Opinion

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,  (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R.

§ 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

The Plaintiff argues that the Commissioner erred in discounting Dr. Rosen's opinion due to the lack of progress notes. The Plaintiff also states the ALJ erred in his characterization of Dr. Cromwell's opinion.

### (a) The ALJ's Consideration of Dr. Rosen

On July 15, 2004, Dr. Rosen opined the Plaintiff suffered from an extremely painful neurological disease as well as post traumatic stress syndrome (Tr. 21). Dr. Rosen further opined the Plaintiff met the criteria of Medical Listing 12.06 anxiety-related disorders and 12.04 affective disorders of the listing impairments. Dr. Rosen opined the Plaintiff had been disabled since August 20, 1992. (Tr. 21). The Plaintiff argues the ALJ erred because he failed to credit the testimony of Dr.

25

Rosen, one of the Plaintiff's treating physicians.  Dr. Rosen treated the Plaintiff from 1992 through 1996 however, the Plaintiff states the Plaintiff and Dr. Rosen regularly spoke on the phone even though the Plaintiff had not seen Dr. Rosen in several years.  According to Dr. Rosen, her notes were destroyed by an "Act of God," so she had no medical records to support her opinion.

> In his decision, the ALJ discounted Dr. Rosen's opinion as follows:
>> [t]he undersigned has considered the opinion of Dr. Rosen dated July 15, 2004, that the claimant meets the criteria for medical listing 12.04, affective disorders and medical listing 12.06, anxiety-related disorders. While the undersigned has noted that the claimant's records were destroyed per Dr. Rosen the undersigned also notes that no other physician has mentioned such severe mental limitations in the file.  Dr. Rosen stated that she had spoken to the claimant as recent as June 18, 2004, however, those notes were not included in the file. Furthermore, the record does not show that the claimant attended any mental health counseling for alleged extreme mental impairments. Therefore, the undersigned finds that Dr. Rosen's opinion is not supported by the medical evidence of record.

(Tr. 24).  Thus, the ALJ did not make a decision based solely upon Dr. Rosen's lack of progress notes, but upon the lack of any medical evidence in the record that the Plaintiff had severe disabling mental impairments.  The ALJ may discount a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion is inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527 (d)(2).   While the Plaintiff argues the ALJ should have called Dr. Rosen to testify, it is the Plaintiff's burden to present evidence to support her disability claims. Turner v Commissioner of Social Security, 182 Fed. Appx. 946, 948 (11th Cir. 2006) (Jones v Apfel, 190 F.3d 1224, 1228 (11th Cir, 1999)).  Thus, the ALJ properly discounted Dr. Rosen's opinion and the case should not be remanded on that basis.

### (b) The ALJ's Consideration of Dr. Cromwell's Opinion

The Plaintiff argues the ALJ improperly minimized Dr. Cromwell's diagnosis even though Dr.

Cromwell indicated the Plaintiff displayed psychomotor retardation, word finding, difficulties, sadness, anxiety, and slowed speech.  Regarding Dr. Cromwell's opinion, the ALJ found in pertinent part as follows:

> [a]s previously mentioned in this decision the undersigned has considered the opinion of Dr. Cromwell, a one time examining physician who diagnosed the claimant with major depression on May 7, 2002.  The undersigned notes that Dr. Cromwell's opinion was based on a one time examination.  It is further noted that while Dr. Cromwell diagnosed the claimant with major depression he also described her as alert and oriented to person place and time.  The claimant's memory processes were intact and her general fund of information was good and she appeared to be functioning within the average range of intelligence.  Dr. Cromwell reported that there were no indications of thought disorder, and the claimant denied problems with common compulsions or hallucinations.  The undersigned finds that while Dr. Cromwell diagnosed the claimant with major depression his findings from a one time interview did not show that this would cause a significant limitation in the claimant's ability to perform basic work activities.

(Tr. 23).  Contrary to the Plaintiff's claim, the ALJ clearly considered the opinion of Dr. Cromwell, and the length of his treatment, and found that Dr. Cromwell's opinion did not limit the Plaintiff's ability to work.  *See* McSwain v Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (holding that  a physician who only treats a claimant one time is not considered a treating physician).  The ALJ clearly articulated the reasons for giving less weight to the opinion of Dr. Cromwell and therefore, it is respectfully recommended that the Commissioner's decision should not be remanded on those grounds.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Final Decision of the Commissioner of Social Security (Commissioner) Denying the

Plaintiff Aileen Anderson's Claim for Disability Insurance should be **REMANDED** pursuant to 42 U.S.C. § 405 (g)(Sentence Four) for further consideration of the following issues:

(1) The effect of the Plaintiff's total hearing loss in her left ear on her RFC.  Considering the hearing loss alone and in combination with all of her other impairments.

(2) Consideration by a vocational expert of the Plaintiff's total hearing loss in her left ear on her ability to perform a full range of light work.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this   1st   day of May, 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record, MJCD

28